Case No. 22-14113

# UNITED STATES COURT OF APPEALS
## ELEVENTH CIRCUIT

_____

THE ESTATES OF ROBERT MOSS AND BRENDA MOSS BY DANAE
BROWN, EXECUTRIX, and THE ESTATES OF CHARLES SAUNDERS
AND PEGGY SAUNDERS BY AMANDA ANDREWS, ADMINISTRATOR
OF THE SAUNDERS' ESTATES ("the Alabama Creditors"),

Creditors/Appellants,

vs.

RODNEY DIXON DORAND,

Debtor/Appellee
_____

ON DIRECT APPEAL FROM THE UNITED STATES BANKRUPTCY
COURT FOR THE NORTHERN DISTRICT OF FLORIDA
CASE NUMBER 21-30205-HAC
_____

**BRIEF OF APPELLEE**
_____

ROBERT J. POWELL
Florida Bar No. 70318
Moorhead Law Group, PLLC
127 Palafox Place, Suite 200
Pensacola, FL 32502
(850) 466-4093 (Office)
(850) 477-0982 (Fax)
rpowell@moorheadlaw.com
heidi@moorheadlaw.com
acavin@moorheadlaw.com
*Attorneys for Appellee*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. R. 26.1-1 – 26.1-3, the undersigned attorney for Appellee certifies that the Certificate of Interested Persons and Corporate Disclosure Statement contained in the Appellants' Initial Brief contains a complete and accurate list of the trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this particular appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party, with the exception of the following:

DC Law, PLLC — Law Firm of Appellants' Counsel

Moorhead Law Group, PLLC — Law Firm of Appellee's Counsel

Specie, Karen K. — Originally Presiding Bankruptcy Judge

Von Hoene Law Firm, PLLC — Law Firm of Appellee's Co-Counsel

/s/ Robert J. Powell
**ROBERT J. POWELL**

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary to dispose of this bankruptcy appeal as the issues involved are controlled by straightforward statutory provisions and well-established precedent.

# TABLE OF CONTENTS

**Page**

Certificate of Interested Persons and Corporate Disclosure Statement..... C-1

Statement Regarding Oral Argument.................................................................i

Table of Contents ..................................................................................... ii

Table of Citations ................................................................................... iv

Jurisdictional Statement ........................................................................viii

Statement of the Issues...............................................................................1

Statement of the Case ................................................................................1

Summary of the Argument.......................................................................17

Argument ...................................................................................................20

    I.    DORAND'S BANKRUPTCY ESTATE INCLUDES HIS IRA OWNERSHIP INTEREST, WHICH THE STATE COURT NEVER TERMINATED...................................................................20

        A. The Alabama Creditors failed to preserve for appellate review the argument that Ala. Code § 6-6-180 extinguished Dorand's interest in the IRA. ...............................21

        B. The Morgan Stanley judgment did not terminate Dorand's interest in the IRA which is property of Dorand's bankruptcy estate. ......................................25

    II.   THE BANKRUPTCY COURT CORRECTLY HELD THAT THE MORGAN STANLEY JUDGMENT DID NOT CREATE A SETOFF RIGHT UNDER BANKRUPTCY CODE SECTION 553...............32

III. LITIGATION OF THE IRA EXEMPTION IN BANKRUPTCY COURT WAS NOT PROHIBITED BY *ROOKER-FELDMAN*, FULL FAITH AND CREDIT, OR COLLATERAL ESTOPPEL................37

    A. Litigation of Dorand's bankruptcy exemption does not offend *Rooker-Feldman*...............................................................................38

    B. The Full Faith and Credit clause does not prohibit a ruling from the Bankruptcy Court on the IRA exemption............................42

    C. Collateral estoppel does not apply. ............................................43

        1. The State Court exemption proceeding did not involve an identical issue.................................................................44
        2. The Debtor's entitlement to exemptions under applicable Florida law was not actually litigated...........50
        3. Resolution of Dorand's substantive legal right to exempt the IRA was not necessary to the State Court's order................................................................51

Conclusion................................................................................................54

Certificate of Compliance ...................................................................55

Certificate of Service ............................................................................55

# TABLE OF CITATIONS

**Cases**                                                         **Pages**

*Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958 (11th Cir. 2012) ......................41

*Beem v. Ferguson*, 713 F. App'x 974 (11th Cir. 2018) ........................................43

*Behr v. Campbell*, 8 F.4th 1206 (11th Cir. 2021) ............................................39, 40

*Brook v. Chase Bank USA, N.A.*, 566 F. App'x 787 (11th Cir. 2014)..................33

*Cash Inn of Dade, Inc. v. Metropolitan Dade County*,
938 F.2d 1239 (11th Cir. 1991) ..............................................................................49

*CSX Transportation, Inc. v. Brotherhood of Maintenance of Way Employees*,
327 F.3d 1309 (11th Cir. 2003) ..............................................................................44

*D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983)...........................................39

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005)......39, 40

*GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183 (10th Cir. 2022) ........................21

*Industrial Park Development Corp. v. American Express Bank, FSB*,
960 F.Supp.2d 1363 (M.D. Fla. 2013)....................................................................33

*In re Allen*, 203 B.R. 786 (Bankr. M.D. Fla. 1996) ...............................................31

*In re Bracewell*, 454 F.3d 1234 (11th Cir. 2006)....................................................26

*In re Friedberg*, 502 B.R. 8 (Bankr. D. Conn. 2013) .......................................42, 43

*In re Fonke*, 321 B.R. 199 (Bankr. S.D. Tex. 2005) .........................................46, 47

*In re Fundamental Longterm Care, Inc.*, 873 F.3d 1325 (11th. Cir. 2017)...........40

iv

*In re Gray*, 322 B.R. 682 (Bankr. N.D. Ala. 2005) ...............................................54

*In re Harris*, 3 F.4th 1339 (11th Cir. 2021) .......................................................43, 53

*In re Heatherwood Holdings, LLC*, 746 F.3d 1206 (11th Cir. 2014).....................17

*In re Holywell Corp.*, 913 F.2d 873 (11th Cir. 1990) ...........................................25

*In re Hughes*, 293 B.R. 528 (Bankr. M.D. Fla. 2003)...........................................49

*In re Kellogg*, 620 B.R. 170 (Bankr. M.D. Fla. 2020)..........................................17

*In re Magelitz*, 386 B.R. 879 (Bankr. N.D. Fla. 2008) ..........................................47

*In re Marona*, 54 B.R. 65 (Bankr. N.D. Ala. 1985)...................................27, 28, 29

*In re Patterson*, 967 F.2d 505 (11th Cir. 1992).......................................................33

*In re Ryan*, 276 F. App'x 963 (11th Cir. 2008) ......................................................40

*In re Quade*, 498 B.R. 852 (N.D. Ill. 2013) ............................................................30

*In re SemCrude, L.P.*, 399 B.R. 388 (Bankr. D. Del. 2009) ...................................37

*In re Thomas*, 883 F.2d 991 (11th Cir. 1989).........................................................26

*Juris v. Inamed Corp.*, 685 F.3d 1294 (11th Cir. 2012) .........................................21

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.*,
140 S. Ct. 1589 (2020).............................................................................................12

*Matter of Sankner*, 69 B.R. 312 (Bankr. M.D. Fla. 1987) .....................................51

*Marrese v. American Academy of Orthopaedic Surgeons*,
470 U.S. 373 (1985)............................................................................................42, 43

*McCulley v. Bank of America, N.A.*, 605 F. App'x 875 (11th Cir. 2015) ............44

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) .................................................39

*State of Fla. Bd. of Trustees of Internal Imp. Trust Fund v. Charley Toppino & Sons, Inc.*, 514 F.2d 700 (5th Cir. 1975) .............................................49

*Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992) .................................................47

## **Statutes**

Ala. Code § 6-6-180 .................................... 14, 15, 17, 21, 22, 27, 29, 30

Ala. Code § 6-10-29 .........................................................................48, 52

Title 6, Chapter 10, Ala. Code .........................................................49

Fla. Stat. § 222.20.........................................................................46

Fla. Stat. § 222.21................................................ 1, 5, 13, 17, 49, 51, 54

11 U.S.C. § 522.........................................................................45, 46

11 U.S.C. § 523.........................................................................14

11 U.S.C. § 541................................................ 18, 21, 25, 31, 40, 47

11 U.S.C. § 553.........................................................................19, 33, 36

26 U.S.C. § 408.........................................................................2, 48

26 U.S.C. § 4975.........................................................................48

28 U.S.C. § 157.........................................................................41

28 U.S.C. § 1334.........................................................................40

28 U.S.C. § 1738.........................................................................42

## Rules

Ala. R. Civ. P. 44.1 ................................................................................7

Ala. R. Civ. P. 64A ...................................................................10, 29, 48

Ala. R. Civ. P. 64B.........................................................................10, 48

Fed. R. Bankr. P. 4003 .......................................................16, 17, 46, 47

## STATEMENT OF SUBJECT-MATTER JURISDICTION

Appellee, Rodney Dorand ("Dorand") submits the following alternative jurisdictional statement in accordance with 11th Circuit Rules 28-1(g) and 28-2, and Federal Rule of Appellate Procedure 28(a)(4).

On appeal is the Final Order on Objections to Exemptions (Docs. 35, 79, 204) and Order Cancelling Pretrial Conference and Trial (the "Exemption Order") that the US Bankruptcy Court for the Northern District of Florida ("Bankruptcy Court") rendered on September 27, 2022. Appx. 1278[1]. The Exemption Order overruled objections to Dorand's claim that an individual retirement account is exempt from administration of creditor claims in Dorand's Chapter 7 bankruptcy case. Pursuant to 28 U.S.C. §§ 157(a) and (b)(1), and the standing order of the United States District Court for the Northern District of Florida — referring all bankruptcy matters in the Northern District of Florida to the Bankruptcy Court — the Bankruptcy Court had subject matter jurisdiction over the objections to Dorand's

---

[1]The Appendix to Appellant's Brief is a six-volume PDF consisting of 1,300 pages. Citations to the Appendix are by reference to the page number of the PDF and appear in the following form: Appx \_\_\_\_, denoting "Appendix to Appellant's Brief <u>page number</u>". Where appropriate, a specific paragraph or line reference will follow.

exemption claim, a core bankruptcy proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

Federal Rule of Bankruptcy Procedure 8002(a)(1) imposes a fourteen-day time period in which to file notice of appeal. Appellants, the Alabama Creditors timely filed Notice of Appeal in the Bankruptcy Court on October 10, 2022. Appx. 1294. The parties then submitted a joint certification seeking appellate review of the Exemption Order by this Court pursuant to 28 U.S.C. § 158(d)(2)(A), which was timely filed on October 18, 2022 within sixty days of entry of the Exemption Order pursuant to Federal Rule of Bankruptcy Procedure 8006(f)(1). Supp. Appx. 36[2]. The Bankruptcy Court issued its Order Granting Motion for Certification of Direct Appeal on October 24, 2022, affirming that a direct appeal of the Exemption Order to this Court is warranted pursuant to 28 U.S.C. § 158(d)(2)(A)(iii) as such would materially advance the progress of the case by expediting the administration and closure of the bankruptcy estate. Supp. Appx. 44. On December 14, 2022, this

---

[2]Citations to the Appellee's Supplemental Appendix are by reference to the page number of the PDF and appear in the following form: Supp. Appx. _____ denoting "Appellee's Supplemental Appendix page number."

Court granted this petition seeking direct review of the Exemption Order pursuant to 28 U.S.C. § 158(d). Appx. 1299.

The Exemption Order is a final order which this Court has subject matter jurisdiction to review pursuant to 28 U.S.C. § 158(d)(1).

## STATEMENT OF THE ISSUES

The sole issue on appeal is whether the Bankruptcy Court correctly concluded that Dorand's individual retirement account is exempt from the administration of creditor claims in Dorand's Chapter 7 bankruptcy proceeding.

## STATEMENT OF THE CASE

*Course of Proceedings*

On April 1, 2021, Dorand filed a voluntary petition for Chapter 7 bankruptcy relief in the Bankruptcy Court. Appx. 42. Dorand submitted bankruptcy schedules disclosing ownership of an individual retirement account maintained at Morgan Stanley (the "IRA"). Appx. 71. Dorand claimed the IRA as exempt from the administration of creditor claims. *Id.* Dorand cited section 222.21(2), Florida Statutes, as the basis of the IRA exemption. *Id.*

The Alabama Creditors objected to Dorand's exemption of the IRA. Appx. 146. The creditors argued that Dorand could not relitigate the exempt status of the IRA because this issue was previously adjudicated in state court. Appx. 152, ¶ 64 and 153, ¶ 67. The Alabama Creditors relied upon the ruling of the Tallapoosa County, Alabama Circuit Court ("State Court")

emanating from a garnishment proceeding the creditors initiated after obtaining a money judgment against Dorand. Appx. 147, ¶ 13; *see also* Appx. 413 (the "State Court Exemption Order"). The Alabama Creditors argued that the State Court Exemption Order constituted *res judicata* to the IRA exemption claim in the Bankruptcy Court. Appx. 154, ¶ 74. Alternatively, the creditors argued that the IRA was not even Dorand's property under Alabama law, but instead belonged to a trust, and that Dorand was estopped from claiming exemptions in his bankruptcy for an asset of this trust. Appx. 155, ¶¶ 75-78. Next, the Alabama Creditors claimed that Dorand had transferred ownership of the IRA to his trust in violation of 26 U.S.C. § 408 limiting ownership of an IRA to an individual. Appx. 156, ¶¶ 80-81. The Alabama Creditors also argued that Dorand exceeded applicable IRA contribution limitations, thus forfeiting the IRA's exempt status. Appx. 156, ¶ 82.

As another challenge to the exempt status of the IRA, the Alabama Creditors claimed that the IRA was no longer Dorand's property because the State Court entered a judgment against Morgan Stanley permitting a setoff against the IRA to satisfy this judgment debt. Appx. 156, ¶ 83. The creditors insisted the IRA funds were no longer property of Dorand's bankruptcy

estate because Morgan Stanley was granted a setoff right before the bankruptcy commenced. Appx. 157, ¶ 86.

Dorand responded to the objection, generally denying the substance and legal arguments that the Alabama Creditors asserted. Appx. 163. Of paramount importance to this appeal, Dorand denied the Alabama Creditors' allegation that "[t]he Debtor's claims were decided under Florida substantive law and Alabama procedural law." Appx. 186, ¶ 62.

The Alabama Creditors moved for summary judgment on the IRA exemption issue. Appx. 521; 526; and 538. In support, the Alabama Creditors argued that the State Court ruling on various exemption issues triggered the *Rooker-Feldman* doctrine precluding further review of this matter in the Bankruptcy Court. Appx. 543. Alternatively, the Alabama Creditors claimed that the Full Faith and Credit clause of the US Constitution required the Bankruptcy Court to give "claim and issue preclusive effect" to the State Court's denial of Dorand's exemption of the IRA. Appx. 546-547. In this vein, the creditors argued that *res judicata* and collateral estoppel preclude any litigation over the IRA's exempt status in Dorand's bankruptcy proceeding because the State Court already adjudicated this issue. Appx. 546-549.

Dorand opposed the Alabama Creditors' summary judgment motion. Appx. 575. Dorand explained that the Full Faith and Credit clause does not preclude litigation of the IRA exemption issue in the Bankruptcy Court. Appx. 582. First, Dorand demonstrated that Alabama state law on issue and claim preclusion does not apply for several reasons, including the substantive and procedural distinctions between the State Court exemption proceeding and the Bankruptcy Court exemption proceeding. Appx. 583; 586-594. Dorand also highlighted an exception to the Full Faith and Credit doctrine which applies to a federal court's protection of its jurisdiction and enforcement of its orders — an exception squarely applicable to the Bankruptcy Court's exclusive jurisdiction over Dorand's property and the determination of any right to claim exemptions. Appx. 584. Dorand also disputed the Alabama Creditors' contention that *Rooker-Feldman* prohibited any further litigation on the exempt status of the IRA in the Bankruptcy Court. Appx. 584-585. Finally, Dorand highlighted the absence of key elements underlying the doctrines of *res judicata* and collateral estoppel, neither of which prohibit further litigation of the IRA exemption issue. Appx. 586-594.

Following a hearing, the Bankruptcy Court denied the Alabama Creditors' summary judgment motion. Supp. Appx. 10. The Bankruptcy Court then ordered the parties to submit supplemental briefs regarding *inter alia* the IRA exemption issue. Appx. 598. Among other issues not relevant to this appeal, the court directed the parties to brief the ownership of the IRA, the State Court's legal basis for denying the IRA exemption, and the impact of any setoff right granted to Morgan Stanley on the IRA's exempt status. Appx. 602-603.

In accordance with this order, Dorand submitted his supplemental brief discussing the legal basis of his IRA exemption and the evidentiary basis of his opposition to the Alabama Creditors' objection. Appx. 620-633. In his supplemental brief, Dorand explained that the IRA is exempt pursuant to section 222.21(2)(a), Florida Statutes, which generally exempts individual retirement accounts from creditor claims against the owner, participant, or beneficiary if the account is maintained in accordance with a plan exempt under applicable IRS rules[3]. Appx. 620-621. Regarding the Alabama Creditors' argument that Dorand's trust owns the IRA, Dorand presented

---

[3]Omitted here is any discussion of matters raised in the supplemental brief that are irrelevant to the arguments on appeal.

testimony from a Morgan Stanley corporate representative and IRA statements demonstrating that Dorand has always owned the IRA individually. Appx. 623 (citing Appx. 831 at 23:7-24:5 and Appx. 834 at 33:16-22[4]). Dorand also established that Morgan Stanley never liquidated his IRA, but merely converted the securities previously held in the IRA to cash, which does not forfeit the IRA's exempt status. Appx. 624 (citing Appx. 832 at 25:11-19; Appx. 837 at 46:19-49:25; and Appx. 853 at 110:3-111:11).

Next, Dorand briefed the legal basis of the State Court Exemption Order as it relates to the Alabama Creditors' arguments concerning *res judicata* and collateral estoppel. Dorand unpacked the Alabama substantive and procedural underpinnings of the State Court garnishment proceeding. Appx. 628-630. Dorand demonstrated that the State Court Exemption Order is not based on any Florida law. Appx. 630. Dorand also addressed the Alabama Creditors' argument that the State Court entered a judgment against Morgan Stanley creating a right of setoff against the IRA funds, which exclude these funds from Dorand's bankruptcy estate. Appx. 630-633. Dorand explained that there is no mutuality of obligation between Dorand

---

[4]This pin citation to the Morgan Stanley corporate representative deposition transcript refers to the page and line number of this transcript.

and Morgan Stanley to support a setoff, and in any event, Morgan Stanley never liquidated the IRA as the judgment authorized, but instead converted the investments it previously held to cash, which remained in the account until Dorand's bankruptcy filing. *Id.*

The Alabama Creditors also filed a supplemental brief supporting their objection to the exemption of the IRA. Appx. 1206. The creditors first argued that the State Court denied Dorand's exemption claim on the basis of Florida law. Appx. 1208.

In support, the creditors contend that Dorand used a "Florida claim of exemption form" when responding to the Alabama Creditors' garnishment of the IRA. Appx. 1209. Accordingly, the Alabama Creditors argued that Dorand relied on Florida substantive law for his exemption claims. Appx. 1210. Relying upon an Alabama Rule of Civil Procedure, the creditors explained that they construed this exemption claim form as "[Dorand's] notice under Rule 44.1 that [Dorand] had asserted Florida substantive law regarding his exemption rights." Appx. 1210. The Alabama Creditors claimed that they challenged Dorand's exemption claim as procedurally defective under Alabama procedural law, and substantively defective under Florida law. Appx. 1211. Because Dorand raised — or could have raised —

Florida substantive law in the State Court garnishment proceeding, the Alabama Creditors argued that *res judicata* barred further litigation of the IRA exemption issue in the Bankruptcy Court. Appx. 1212-1214. The creditors argued Dorand is judicially estopped from challenging the State Court Exemption Order that conclusively determined the IRA exemption issue, precluding further litigation in Bankruptcy Court as an impermissible collateral attack on the order, which Dorand never appealed. Appx. 1220-1224.

Next, the Alabama Creditors argued in their supplemental brief that the IRA was not property of Dorand's bankruptcy estate because the State Court entered a judgment against Morgan Stanley directing payment of the judgment by setting off Dorand's IRA against the judgment debt. Appx. 1224-1233. The creditors explained the nature of an Alabama creditor's bill, which was the basis of this judgment, even though the Alabama Creditors originally issued a garnishment writ to Morgan Stanley. Appx. 1225-1227. The creditors argued the judgment created a proper setoff right — permitting Morgan Stanley to liquidate Dorand's IRA to satisfy Dorand's debt to the Alabama Creditors. Appx. 1227-1233. The Alabama Creditors argued this judgment terminated Dorand's interest in the IRA when Morgan

Stanley liquidated the IRA before the Bankruptcy Court proceeding, removing the funds from the bankruptcy estate. *Id.* The creditors again argued that any further litigation of the issue in Bankruptcy Court would offend the Full Faith and Credit clause as an improper collateral attack on the judgment. Appx. 1227; 1229.

Lastly, the Alabama Creditors argued in their supplemental brief that the IRA is not exempt because Dorand engaged in certain prohibited transactions involving an alleged ownership transfer of the IRA and impermissible deposits. Appx. 1233-1242. The Alabama Creditors abandoned this argument on appeal.

*Disposition Below*

The Bankruptcy Court overruled the Alabama Creditors' objection to Dorand's exemption of the IRA. Appx. 1278[5]. The Bankruptcy Court considered the background of the State Court litigation against Dorand and

---

[5]Before issuing its final order, the Bankruptcy Court issued a non-final preliminary ruling on the IRA exemption issue, rejecting the Alabama Creditors' legal arguments, and ultimately determining an evidentiary hearing would be held if the parties request one to resolve any factual dispute or misapprehension in this preliminary order. Supp. Appx. 17, 27-29. The parties subsequently conferred and waived the right to an evidentiary hearing, instead submitting the IRA exemption issue for a final ruling based on the current record. *See* Appx. 1279.

the post-judgment IRA garnishment proceeding involving Morgan Stanley. Appx. 1280. The court acknowledged that the Alabama Creditors bear the burden of demonstrating that the IRA exemption is improper. Appx. 1281.

As a preliminary matter, the Bankruptcy Court recognized that Dorand's exemption of the IRA in his Chapter 7 proceeding is based on Florida law. Appx. 1281. Then, the court addressed the argument that issue and claim preclusion barred further litigation of the IRA exemption. Appx. 1281-1287. The court noted that Dorand responded to the IRA garnishment by claiming various exemptions under Alabama Rule of Civil Procedure 64A — without any mention of Florida law. Appx. 1281-82. In response, the Alabama Creditors contested Dorand's exemption claim pursuant to Alabama Rule of Civil Procedure 64B, again without any mention of Florida law. Appx. 1282. The Bankruptcy Court reviewed the State Court hearing transcript confirming that "neither side raised or argued Florida exemption law." Appx. 1283. Having evaluated the entire State Court exemption proceeding, the court determined that Florida law was only mentioned in the Alabama Creditors' brief opposing Dorand's exemption claim (i) regarding two Florida cases addressing judicial notice of a court file relating to the creditors' arguments about procedural defects in Dorand's exemption

claim under Alabama procedural and substantive law; and (ii) a third Florida case regarding prohibited IRA transactions under federal law. Appx. 1283. The Bankruptcy Court reviewed the State Court Exemption Order — a four-sentence order merely noting that the Alabama Creditors asserted "both procedural and substantive challenges" to Dorand's exemption claim without further explaining the rationale for denying the exemption. *Id.*

With this background, the Bankruptcy Court applied the elements of claim and issue preclusion under Alabama. Appx. 1283-1287. On claim preclusion, the court observed that this requires (i) a prior judgment on the merits; (ii) rendered by a court of competent jurisdiction; and (iii) the same cause of action in both proceedings[6]. Appx. 1284. The court concluded that it is doubtful that an Alabama court would construe Dorand's exemption claim as a cause of action or that the State Court's ruling constitutes a judgment to invoke claim preclusion. Appx. 1284. The Bankruptcy Court also reasoned that the causes of action are not the same for two reasons.

First, the time to address Dorand's exemption in the State Court proceeding differs from the bankruptcy proceeding — the bankruptcy

---

[6]The Bankruptcy Court acknowledged that both claim and issue preclusion require identity of parties — an element satisfied in this case. Appx. 1284.

petition date is the operative date for determining an exemption, as opposed to the time of attaching the lien or levying execution in the State Court proceeding. Appx. 1284-1285[7]. Second, the Bankruptcy Court explained the "causes of action" at issue, involving Dorand's exemption claim, are different because they are governed by two different states' laws. Appx. 1285. The Bankruptcy Court rejected the Alabama Creditors' argument that the State Court applied Florida law in denying the IRA exemption. *Id.*

With respect to issue preclusion, the Bankruptcy Court likewise concluded this doctrine does not apply. Appx. 1286. The court identified the elements necessary to apply issue preclusion including (i) the issue must be identical as the previous suit; (ii) the issue must have been actually litigated; and (iii) resolution of the issue must have been necessary to the prior judgment. *Id.* The court concluded the issues are not identical because Dorand's exemption claim in his bankruptcy proceeding could not have been litigated in the State Court garnishment proceeding. *Id.* The court also concluded that Florida exemptions were not actually litigated in the State

[7]The Bankruptcy Court also identified a US Supreme Court case questioning "defense preclusion" where the defense at issue could not have been raised in the earlier proceeding. Appx. 1285 (citing *Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.*, 140 S. Ct. 1589 (2020)).

Court proceeding. *Id.* More importantly, even if litigated, the Bankruptcy Court ruled that resolving the Florida exemption matter was unnecessary to issue the State Court Exemption Order because the order does not specify the basis of denying the IRA exemption. Appx. 1286-1287.

Having concluded that neither claim nor issue preclusion apply, the Bankruptcy Court next evaluated the exempt status of the IRA. Appx. 1287. The court acknowledged the basis of Dorand's exemption as section 222.21(2)(a), Florida Statutes, and outlined the Alabama Creditors' three objections to this exemption[8]. Appx. 1287-1288. Relevant here, the Bankruptcy Court addressed the argument that the State Court judgment against Morgan Stanley created a valid right of setoff. Appx. 1291. The court first acknowledged that Morgan Stanley did not set off any funds in the IRA. Appx. 1291. Equally important, the Bankruptcy Court recognized that there was no mutuality of obligation between Dorand and Morgan Stanley as required for a valid setoff under the Bankruptcy Code. Appx. 1291-1292.

---

[8]The Alabama Creditors abandoned on appeal their arguments that Dorand's trust owned the IRA, and certain prohibited transactions forfeited the IRA exemption. *See* Appx. 155-156, ¶¶ 75-82.

*Statement of the Facts*

On January 26, 2015, the State Court issued a judgment awarding monetary damages to the Alabama Creditors against Dorand for damages stemming from a failed condominium development. Appx. 135-136[9]; Appx. 1280. Several years later, the creditors commenced collection efforts and obtained a writ of garnishment against Morgan Stanley[10]. Dorand responded by filing a claim of exemption accompanied by a form claiming various grounds for the exemption. Appx. 213-216. With an affidavit signed by their counsel, the Alabama Creditors challenged Dorand's exemption claim raising five different grounds to deny the exemption of the IRA. Appx. 219-222; *see also* Appx. 224-233. The creditors argued that Dorand's exemption claim improperly omitted a personal property inventory

---

[9]The Alabama Creditors objected to the dischargeability of the judgment pursuant to 11 U.S.C. § 523(a)(2), but the Bankruptcy Court overruled that objection following a two-day bench trial. Supp. Appx. 47-73.

[10]The Alabama Creditors argue on appeal that this post-judgment collection proceeding involved a "motion for alternative relief in the form of a creditors' bill pursuant to Ala. Code. § 6-6-180. In. Brf. 10 (citing Appx. 130). The creditors appear to cite the State Court docket as the basis of this assertion. The Appendix does not include any third-party complaint against Morgan Stanley. *See* Morgan Stanley's Amicus Brief at ECF 22, p. 11-13 (explaining deficiencies of any alleged creditor's bill proceeding).

required under Alabama procedural law. Appx. 220. The creditors claimed that Dorand engaged in prohibited transactions forfeiting the IRA exemption under IRS rules. *Id.* The Alabama Creditors insisted that Dorand's trust owned the IRA precluding Dorand from claiming any exemption for this trust asset, and that the creditors held a judgment against the trust. *Id.* For all these reasons, the Alabama Creditors urged the State Court to deny Dorand's exemption claim.

The State Court entered an order denying the IRA exemption. Appx. 412-413. The order recognized that the Alabama Creditors raised "procedural and substantive challenges" to Dorand's exemption claims without any specifics. Appx. 413. The court succinctly denied the exemption after reciting that consideration had been given to the pleadings, submissions, and argument. Appx. 413.

The State Court issued a judgment against Morgan Stanley in the amount of $856,622.39 pursuant to "the Court's authority under § 6-6-180 *et seq.* …" Appx. 649-650. The judgment permits Morgan Stanley to "set-off this payment from any funds in its possession and held for [Dorand's] benefit". Appx. 649. The court stated the judgment would be satisfied upon remitting these funds to the Tallapoosa County Circuit Court Clerk. Appx. 649-650.

The State Court subsequently issued an amended judgment against Morgan Stanley specifically authorizing a set-off of funds held in the IRA. Appx. 652-653.

In accordance with the amended judgment, Morgan Stanley liquidated the investments held in Dorand's IRA by converting them to cash, but never remitted any of these funds to the Alabama Creditors or Tallapoosa County Circuit Court Clerk. Appx. 837 at 49:2-50:5; Appx. 846 at 81:6-7; and Appx. 853 at 110:3-111:11. Dorand filed his bankruptcy petition on April 1, 2021, at which time Dorand owned an IRA at Morgan Stanley containing over $800,000 in cash. Appx. 853 at 111:5-11. Only after Dorand's bankruptcy commenced did Morgan Stanley close the IRA and remit the funds it held to the Chapter 7 Trustee pursuant to a Bankruptcy Court order authorizing the Trustees retention of these funds following their turnover from Morgan Stanley. Appx. 853 at 51:18-53:3; 110:2-111:11; Supp. Appx. 7, ¶¶ 2, 4 (discussing court ordered turnover of IRA funds).

## Standard of Review

The Alabama Creditors object to Dorand's exemption of the IRA pursuant to Federal Rule of Bankruptcy Procedure 4003(b). Subsection (c) of this rule states that "[i]n any hearing under this rule, the objecting party has

the burden of proving that the exemptions are not properly claimed." Fed. R. Bankr. P. 4003(c); *see also In re Kellogg*, 620 B.R. 170, 173 (Bankr. M.D. Fla. 2020) (recognizing that "[i]n bankruptcy a debtor's claim of exemption is presumptively valid [and] [t]he burden falls to the objecting party to establish that the debtor's exemption is not properly claimed.") (quotation marks and citations omitted).

On direct appeal from the Bankruptcy Court, this Court reviews legal conclusions in the Exemption Order *de novo. See In re Heatherwood Holdings, LLC*, 746 F.3d 1206, 1216 (11th Cir. 2014). Factual findings in the Exemption Order are reviewed for clear error. *Id.*

## SUMMARY OF THE ARGUMENT

This Court should affirm the Bankruptcy Court. Dorand's IRA is exempt from creditor claims in his Chapter 7 bankruptcy proceeding pursuant to section 222.21(2)(a), Florida Statutes.

The Alabama Creditors failed to preserve for appellate review their argument that Dorand's IRA ownership interest terminated when the creditors filed their creditors' bill proceeding pursuant to Alabama Code § 6-6-180, thus removing the IRA from his bankruptcy estate. The Alabama Creditors never clearly presented this argument to the Bankruptcy Court.

Procedurally, the creditors argued in Bankruptcy Court that Dorand's IRA interest terminated on the date the judgment was entered against Morgan Stanley authorizing a setoff against the IRA. But on appeal, the creditors argue that Dorand's interest terminated earlier — on the date the creditors' bill proceeding commenced. Substantively, the creditors' argument in Bankruptcy Court relies on the setoff relief in the judgment against Morgan Stanley. However, on appeal, the creditors rely on the effect of commencing a creditors' bill proceeding. Due to these distinctions, this argument is not preserved for review.

Even if this argument is preserved for appellate review, it is meritless. The IRA is property of Dorand's bankruptcy estate. The scope of bankruptcy estate property is broad per Bankruptcy Code section 541(a) and encompasses all legal and equitable interests of the debtor in property. As Morgan Stanley testified, when Dorand filed bankruptcy, he owned an IRA at Morgan Stanley containing approximately $800,000 in cash. Morgan Stanley never remitted any of these funds to the State Court or the Alabama Creditors. Under these circumstances, this IRA became an asset of Dorand's estate when he filed Chapter 7.

The judgment against Morgan Stanley does not entail a valid setoff right. There is no mutuality of obligation between Morgan Stanley and Dorand as required for a setoff under Bankruptcy Code section 553. The Bankruptcy Court did not clearly err in concluding that Dorand was not indebted to Morgan Stanley, thus precluding any setoff.

*Rooker-Feldman* does not apply. This doctrine seldom applies, and this case is no exception. The Bankruptcy Court had jurisdiction over Dorand's property, including subject matter jurisdiction to review the IRA exemption issue. The State Court exemption proceeding involved different legal issues and different law than the Bankruptcy Court exemption proceeding. The Alabama Creditors were not the state-court losers.

The Full Faith and Credit Clause of the U.S. Constitution does not preclude review of the IRA exemption in Bankruptcy Court. While the parties agree that Alabama state law governs the preclusive effect of the State Court Exemption Order, the Alabama Creditors incorrectly presuppose that Alabama preclusion law bars any defense to their objection to the IRA exemption in Bankruptcy Court.

Collateral estoppel or issue preclusion does not apply. Except the identity of the parties, none of the elements necessary to apply this doctrine

are met. The State Court exemption proceeding involved different legal issues than in Bankruptcy Court. The issue of Dorand's exemption of the IRA from creditor claims in his Chapter 7 proceeding was not actually litigated in State Court. Dorand's exemption in his Chapter 7 proceeding is premised on Florida state law, which was never raised in State Court. Even if Florida state law had been raised, resolving that issue was not necessary to the State Court Exemption Order. The Alabama Creditors raised procedural and substantive challenges to Dorand's exemption claim in State Court, but the State Court Exemption Order does not specify the basis for denying the exemption. Any doubt regarding the application of issue preclusion should be resolved in Dorand's favor.

## ARGUMENT

## I.   DORAND'S BANKRUPTCY ESTATE INCLUDES HIS IRA OWNERSHIP INTEREST, WHICH THE STATE COURT NEVER TERMINATED

The Alabama Creditors insist that the IRA is not even property of Dorand's bankruptcy estate. In. Brf. at 15, 19-25. The creditors argue the State Court terminated Dorand's interest in the IRA pursuant to the amended judgment issued against Morgan Stanley on the creditors' alternative filing of a "creditor's bill". *Id.* at 21-23. Even if preserved for appellate review, this

argument entirely misses the mark — it mischaracterizes the amended judgment and the effect of a creditor's bill, and ignores the broad scope of bankruptcy estate property pursuant to Bankruptcy Code section 541(a).

### A. The Alabama Creditors failed to preserve for appellate review the argument that Ala. Code § 6-6-180 extinguished Dorand's interest in the IRA.

Generally, federal courts do not consider arguments raised for the first time on appeal. *Juris v. Inamed Corp.*, 685 F.3d 1294, 1325 (11th Cir. 2012); *see also GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1207 (10th Cir. 2022) (recognizing that "a party must alert the district court to the issue and seek a ruling; a party does not preserve an issue merely by presenting it to the district court in a vague and ambiguous manner, or by making a fleeting contention before the district court."). This Court has routinely held that "if a party hopes to preserve a claim, argument, theory, or defense on appeal, she must first *clearly present* it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it." *See, e.g., Juris*, 685 F.3d at 1325 (emphasis added).

The Alabama Creditors never clearly presented to the Bankruptcy Court their appellate argument that the State Court terminated Dorand's interest in the IRA in its amended judgment granting creditors' bill relief

against Morgan Stanley, thus excluding the IRA from Dorand's bankruptcy estate. Upon close review, this argument does not clearly appear in the creditors' objection to the IRA exemption, summary judgment motion, or supplemental brief. *See* Appx. 156-57 at ¶¶ 83-86; 521-551; and 1206.

The Alabama Creditors merely stated in their objection that "it is arguable that the funds previously held in the account titled the IRA Account ceased to be part of the Debtor's property or the Marriage Trust's property on January 4, 2021 when the Alabama state court entered a judgment against Morgan Stanley for $856,622.39 which also granted Morgan Stanley the right to setoff (sic) its judgment against any funds held for the benefit of the Debtor or the Marriage Trust." Appx. 156, ¶ 83. The ensuing argument regarding the bankruptcy estate relates to the setoff rights allegedly granted in the Morgan Stanley judgment, without any discussion of a creditor's bill proceeding pursuant to Ala. Code § 6-6-180. *See* Appx. 157 at ¶¶ 85-86.

In their supplemental brief, the Alabama Creditors argued that their garnishment proceeding culminated in a personal judgment against Morgan Stanley pursuant to the Alabama creditor's bill statute, authorizing Morgan Stanley to set off the judgment against Dorand's accounts including his

IRA[11]. Appx. 1224-1233. The creditors argue "because Morgan Stanley had possession of the debtor's funds, the funds were rightfully Morgan Stanleys (sic) and in the possession of Morgan Stanley." *Id.* at 1231. The creditors argued that "[t]he effect of this was to terminate all Dorand's interest in these funds and to remove them from the Debtor's estate." *Id.*

But there is a key distinction between the argument presented to the Bankruptcy Court and the argument raised on appeal: the operative date when Dorand's interest in the IRA supposedly terminated. The Alabama Creditors argued in Bankruptcy Court that this occurred "when the Court entered a judgment against Morgan Stanley and ordered it to set-off this judgment against the debtor's accounts.[12]" Appx. 1231. However, on appeal,

---

[11]Explaining the State Court procedural mishmash — blending a garnishment with a creditor's bill proceeding — the Alabama Creditors state "[t]he general rule is that when a creditor's bill is brought to reach a debtor's assets in the hands of a third person, a judgment entered on the creditor's bill cannot exceed the value of those assets *and a personal judgment cannot be rendered against that third person*." Appx. 1225-1226 (emphasis added). But later in this argument, the Alabama Creditors admit that "[t]he Alabama Judgment *was entered against Morgan Stanley personally* for a debt owed by the debtor." *Id.* at 1227 (emphasis added); *see also id* at 1227-28 (stating that "the creditor's bill *resulted in a money judgment against Morgan Stanley* rather than a garnishment.") (emphasis added).

[12]The judgment was initially entered against Morgan Stanley on January 4, 2021, and the amended judgment on January 11, 2021. Appx. 416; 420.

the creditors argue that "because the creditor's bill extinguished Dorand's property rights to the Morgan Stanley IRA *effective December 1, 2020*, that account is not part of the bankruptcy estate." In. Brf. 25 (emphasis added). December 1, 2020 is when the Alabama Creditors filed the creditor's bill as "alternative relief" to the garnishment proceeding they originally initiated, which is earlier than when the creditors argued to the Bankruptcy Court that Dorand's interest in the IRA supposedly terminated. In. Brf. 21.

Another difference between its Bankruptcy Court argument and its appellate argument is the legal basis for terminating Dorand's interest in the IRA. In the Bankruptcy Court, the creditors argued that the setoff relief in the Morgan Stanley judgment terminated Dorand's interest in the IRA. Appx. 1233 (arguing "[b]ecause Morgan Stanley held Dorand's monies and had the right to set them off against the Alabama judgment, Dorand's rights were terminated when the judgment was entered as between Dorand and Morgan Stanley.") But on appeal, the creditors argue that the mere filing of the creditor's bill terminated the IRA interest. In. Brf. 23-24 (arguing that "a creditor's bill is effective on the date it is filed [and] [h]ere, that date is December 1, 2020.").

Against this backdrop, the Alabama Creditors never clearly presented to the Bankruptcy Court their appellate argument that the creditor's bill extinguished Dorand's interest in the IRA effective on the date when this alternative relief was initiated in State Court on December 1, 2020, ultimately removing the IRA from Dorand's bankruptcy estate. This Court should disregard this argument because it is not preserved for appellate review.

> B. The Morgan Stanley judgment did not terminate Dorand's interest in the IRA which is property of Dorand's bankruptcy estate.

Even if preserved, the Alabama Creditors' argument is meritless. Section 541(a)(1) of the Bankruptcy Code provides that "[t]he commencement of a [Chapter 7 proceeding] creates an estate … comprised of all the following property, wherever located and by whomever held: … all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (emphasis added). Bankruptcy courts broadly construe section 541 in determining the scope of property of the estate. *See, e.g., In re Holywell Corp.*, 913 F.2d 873, 881 (11th Cir. 1990) ("[s]ection 541 is construed broadly, so as to effectuate Congressional intent that a wide range of property be included in the estate."). Federal law dictates whether a debtor's interest in property

becomes property of the bankruptcy estate, while state law determines the nature and extent of such interest. *In re Thomas*, 883 F.2d 991, 995 (11th Cir. 1989). As this Court has recognized, the "commencement of the bankruptcy case [is] the key date for property definition purposes." *See In re Bracewell*, 454 F.3d 1234, 1237 (11th Cir. 2006).

The Alabama Creditors argue the IRA is not property of Dorand's bankruptcy estate because the amended judgment against Morgan Stanley "fully and finally terminated Dorand's rights to any accounts or monies therein held by Morgan Stanley." In. Brf. 23. But the Alabama Creditors provide no record citation or legal authority for this assertion. *See id*. And the language of the Morgan Stanley judgments does not terminate or extinguish Dorand's ownership interest in the IRA. *See* Appx. 416; 420. The judgments just state that "the Court enters judgment against Morgan Stanley Smith Barney, LLC in the amount of $856,622.39". *Id*. The judgments authorize Morgan Stanley to "set-off this payment from any funds in its possession and held for the benefit of either Rodney Dorand individually or the Rodney D. and Barbara H. Dorand Living Trust" including "funds held in an account designated as an Individual Retirement Account." Appx. 416; 421.

Nor does the plain language of Ala. Code § 6-6-180 support the notion that entry of a judgment in a creditor's bill proceeding extinguishes the judgment debtor's ownership interest in the underlying asset:

> "When an execution for money from any court has been issued against a defendant and is not satisfied, the plaintiff, or the person for whose benefit such execution is sued out, may file a complaint against such defendant to compel the discovery of any property belonging to him, or held in trust for him, and to prevent the transfer, payment or delivery thereof to such defendant, except when the trust has been created by, or proceeded from, some other person than the defendant himself; and the court may bring any other party before it and adjudge such property, or the interest of the defendant therein, to the satisfaction of the sum due the plaintiff."

Ala. Code. § 6-6-180. Unpacking this language, the statute permits a court to "bring any other party before it and adjudge such property [held by a third party], or the interest of the defendant therein, to the satisfaction of the sum due the plaintiff." *Id.* The plain language of the statute contemplates satisfaction of a money judgment, but does not state that adjudication of a creditor's bill terminates the interest of a judgment debtor in the underlying property at issue. The Alabama Creditors provide no authority for this assertion.

The Alabama Creditors rely on *In re Marona*, 54 B.R. 65 (Bankr. N.D. Ala. 1985) for their contention that the Morgan Stanley judgment terminated

Dorand's interest in the IRA removing this asset from Dorand's bankruptcy estate. *See* In. Brf. 24. Reliance on *Marona* is misplaced as this case is distinguishable. In *Marona*, the debtor was sued prepetition for causing a vehicle accident that culminated in a monetary judgment in favor of the accident victim and his insurer. *Marona*, 54 B.R. at 66. Per Alabama statutes, the debtor had deposited certain funds with the Department of Public Safety which the debtor attempted to recover as property of his bankruptcy estate. *Id.* The statute required this deposit to satisfy any judgment for damages resulting from the accident, and once deposited, a companion statute stated the funds are only applicable to payment of the judgment rendered against the depositor. *Id.* at 67. In *Marona*, a judgment was entered before the bankruptcy commenced, and the funds originally on deposit with the Department of Public Safety had been remitted to the circuit court clerk in accordance with the judgment. *Id.* at 66. The bankruptcy court concluded that the debtor no longer had any legal or equitable interest in the deposit because the governing statute expressly limits application of the deposit to payment of the judgment rendered prepetition. *Id.* at 67.

The statutory deposit in *Marona* is qualitatively distinct from the IRA that Dorand maintained at Morgan Stanley. Dorand did not deposit funds

in the IRA pursuant to a statutory mandate earmarking those funds for an accident victim. Instead, the IRA is Dorand's financial account which he voluntarily established over twenty years before his bankruptcy filing. Another key distinction is the deposit funds in *Marona* were remitted to the circuit court clerk to administer for the benefit of the accident victim. But here, Morgan Stanley never remitted any of the IRA funds to the Alabama Creditors or the State Court.

There are also fatal procedural defects in the creditor's bill proceeding that the Alabama Creditors claim to have initiated pursuant to Ala. Code § 6-6-180[13]. First, the Alabama Creditors started the process as a garnishment, which prompted Morgan Stanley's appearance before the State Court when it answered the garnishment writ that the creditors issued pursuant to Alabama Rule of Civil Procedure 64A. *See* Appx. 127-129. Confronted with a challenge regarding the propriety of garnishing the IRA account, the creditors pivoted to their "motion for alternative relief/creditor's bill", but never commenced a separate action as the

---

[13]The record on appeal does not appear to contain a copy of the Alabama Creditors' filing for this alternative relief. Instead, the Alabama Creditors cite the State Court docket entry which identifies the filing of a "Motion for Alternative Relief/Creditor's Bill Filed". *See* In. Brf. at 21 (citing Appx. 129).

governing statute requires. *See* Appx. 129 (reflecting docket entry for creditor's bill in original action against Dorand); *see also* Ala. Code 6-6-180 (authorizing plaintiff holding unsatisfied execution to "file a complaint against such defendant …"). Instead, the Alabama Creditors just amalgamated features of the creditors' bill with the garnishment proceeding they originally commenced, including for the establishment of personal jurisdiction over Morgan Stanley. *See* In. Brf. 22-23. Given these procedural defects, it is doubtful that the Morgan Stanley judgments are valid.

Regardless, it is undisputed that Morgan Stanley never liquidated the IRA and remitted any funds to the Alabama State Court or the Alabama Creditors pursuant to the amended judgment. Morgan Stanley converted to cash the investments held in the IRA, but never disbursed any of these funds to the Alabama State Court or the Alabama Creditors. Appx. 837 at 49:2-50:5; Appx. 846 at 81:6-7; and Appx. 853 at 110:3-111:11. As Morgan Stanley's corporate representative testified, when Dorand filed bankruptcy, he still owned an IRA at Morgan Stanley containing over $800,000 in cash. Appx. 853 at 111:5-11. Under these circumstances, Dorand's Chapter 7 bankruptcy estate included Dorand's interest in the IRA. *See, e.g., In re Quade*, 498 B.R. 852, 855-56 (N.D. Ill. 2013) (affirming bankruptcy court determination that

IRA was property of estate despite state court order directing turnover of IRA funds, where IRA account manager did not transfer funds before bankruptcy petition date); *see also In re Allen*, 203 B.R. 786, 793 (Bankr. M.D. Fla. 1996) (rejecting judgment creditor's argument that IRA is not property of bankrupt estate based on prepetition turnover order directing turnover of IRA funds to judgment creditor, and denying collateral estoppel effect of turnover order).

Only after Dorand's bankruptcy commenced did Morgan Stanley close the IRA and remit the funds it held to the Chapter 7 Trustee, with the Bankruptcy Court subsequently ordering the Trustee's retention of these funds following a court-ordered turnover from Morgan Stanley. Appx. 853 at 51:18-53:3; 110:2-111:11; Supp. Appx. 7, ¶¶ 2, 4. The very entry of an order mandating the turnover from Morgan Stanley and retention by the Chapter 7 Trustee of these funds further underscores the Bankruptcy Court's jurisdiction over this account as property of Dorand's bankruptcy estate. With this background, Dorand's bankruptcy estate included his ownership interest in the IRA when Dorand commenced his Chapter 7 proceeding pursuant to Bankruptcy Code section 541(a)(1).

## II.   THE BANKRUPTCY COURT CORRECTLY HELD THAT THE MORGAN STANLEY JUDGMENT DID NOT CREATE A SETOFF RIGHT UNDER BANKRUPTCY CODE SECTION 553

The Alabama Creditors argue the Bankruptcy Court clearly erred in concluding there was no valid setoff right as to the IRA because Dorand owes no debt to Morgan Stanley. In. Brf. 25. The creditors insist the Morgan Stanley judgment indebted Dorand to Morgan Stanley establishing the requisite mutuality of obligation. In. Brf. 25, 26. This argument is misguided and devoid of evidentiary support.

In January 2021, the State Court issued an amended judgment "against Morgan Stanley in the amount of $856,622.39." Appx. 420. The amended judgment permits Morgan Stanley to "set-off this payment from any funds in its possession and held for the benefit of either Rodney Dorand individually or the [Marital Trust]", including the IRA. *Id.* 420-421. Lastly, the amended judgment states that it will be satisfied "[u]pon remittance of these funds to the [State Court Clerk]." Appx. 421. Importantly, the Morgan Stanley judgment never addresses or imposes any debt or obligation on Dorand to Morgan Stanley.

In the bankruptcy setting, "[t]he right to set off pre-petition *mutual debts* is preserved by Section 553 of the Bankruptcy Code." *Brook v. Chase Bank USA, N.A.*, 566 F. App'x 787, 789 (11th Cir. 2014) (emphasis added). As this Court explained in *Brook*, "[s]et off under Section 553 is the 'right to cancel out mutual debts against one another in full or in part … to avoid the absurdity of making A pay B when B owes A.' " *Id.* (quoting *In re Patterson*, 967 F. 2d 505, 508-09 (11th Cir. 1992). But the right to set off is discretionary with the bankruptcy court — it is not an absolute right. *Brook*, 566 Fed. Appx at 789.

Here, the Morgan Stanley judgment omits the critical element of a set off — mutuality of obligation. Although the IRA represented funds in an account owed to Dorand[14], there is no evidence that Dorand ever owed any debt or obligation to Morgan Stanley in this case. *See* Supp. Appx. 2 (Bankruptcy Court Claims Register reflecting no claim filed by Morgan Stanley); Appx. 72-78 (Dorand's sworn schedules disclosing no debt to Morgan Stanley); Appx. 852 at 107:11-109:9. And again, the amended

---

[14]*See, e.g., Industrial Park Development Corp. v. American Express Bank, FSB*, 960 F.Supp.2d 1363, 1367 (M.D. Fla. 2013) (explaining that "when a customer … deposits funds into his account, the bank takes title to the money and owes a debt to its customer corresponding to the amount of the deposit.").

judgment imposes no debt or obligation on the Debtor in favor of Morgan Stanley. *See* Appx. 420 (stating that "the Court enters *judgment against Morgan Stanley … in the amount of $856,622.39.*") (emphasis added).

The Alabama Creditors simply misconstrue the obligations reflected in the judgment in their insistence that Morgan Stanley and Dorand were mutually indebted. The creditors argue that Dorand owed Morgan Stanley the value of the IRA to reimburse Morgan Stanley for the debt it incurred pursuant to the judgment. *See* In. Brf. 26 (arguing "there was mutuality of debt (sic) Dorand to pay Morgan Stanley the amount of the judgment entered against Morgan Stanley …"); *see also* In. Brf. 31 (arguing "[t]he bankruptcy court erroneously concluded Dorand owed no debt to Morgan Stanley in spite of the [State Court] judgment expressly granting Morgan Stanley the right to setoff Dorand's funds to reimburse Morgan Stanley for the judgment entered against it …"). But this is not stated in the judgment.

And if this were true, the result would be cancellation of the mutual indebtedness of Morgan Stanley and Dorand without any payment to the Alabama Creditors — Morgan Stanley would no longer owe Dorand the funds in the IRA and Dorand would be relieved of his indebtedness to Morgan Stanley in 'reimbursing' Morgan Stanley. The Alabama Creditors

ignore the real substance of the Morgan Stanley judgment which requires payment to the Alabama Creditors via remittance to the State Court Clerk, and imposes no debt on Dorand. Appx. 421 (providing that "[u]pon remittance of these funds to the Circuit Clerk of Tallapoosa County, Alabama the judgment against Morgan Stanley Smith Barney, LLC's (sic) will be satisfied.").

To be sure, in Bankruptcy Court the Alabama Creditors repeatedly stated that the Morgan Stanley judgment created a debt in their favor. *See* Appx. 1207 at ¶ (c) (framing issue as "[w]hether the Alabama state court judgment *in favor of Creditors* and against Morgan Stanley created a right of setoff in favor of Morgan Stanley …"); Appx. 532 at ¶ 13 (asserting that "the Alabama trial court issued a judgment against Morgan Stanley for the full amount of these funds *in partial satisfaction of the Creditors' judgment*.") (emphasis added); Appx. 1215 (stating that "Creditors' counsel also filed a request for entry of judgment against the garnishees on September 22, 2020 …"); Appx. 1227 (asserting that "[t]he Alabama judgment was entered against Morgan Stanley personally for a debt owed by the debtor."). This is consistent with the creditors' position in State Court. *See* Appx. 1004, 14:24-15:5 (arguing to State Court that "all you have to do is *enter a personal*

*judgment against that party* for the amount of the funds that they've admitted holding for Dr. Dorand and when they tender the funds, the funds are released from Dr. Dorand's accounts under that judgment.") (emphasis added); *see also* Appx. 1007, 17:11-14 (representing to the State Court that "[i]f you garnish this money [in the IRA], this money will come to court, it will be released to me for the benefit of [the Alabama Creditors].")). It is disingenuous to recast the Morgan Stanley judgment as somehow indebting Dorand to Morgan Stanley when the Alabama Creditors have repeatedly framed the judgment as creating a debt in their favor.

With this background, Dorand owed the Alabama Creditors a debt pursuant to their unsatisfied money judgment; Morgan Stanley was indebted to Dorand for the funds in the IRA; and Morgan Stanley purportedly incurred a debt to the Alabama Creditors pursuant to the judgment the State Court entered against Morgan Stanley. *See* Appx. 420-21. This is not the mutuality of obligation necessary for a setoff pursuant to section 553 of the Bankruptcy Code. Accordingly, there is no set off in the amended judgment that fits the provisions of Code section 553. *See* 11 U.S.C. § 553(a) (generally preserving the "right of *a creditor* to offset a [prepetition]

*mutual debt* owing by such creditor to the debtor … against *a* [prepetition] *claim of such creditor against the debtor*") (emphasis added)[15].

Equally important, Morgan Stanley never complied with the amended judgment by remitting the funds in the IRA to the Alabama State Court. Appx. 838 at 49:5-50:5; Appx. 853 at 110:3-111:11. Instead, Morgan Stanley just converted the prior investments held in the IRA to cash, which remained in the IRA until the Debtor filed bankruptcy. Appx. 838 at 46:19-49:25; 110:3-111:11.

### III. LITIGATION OF THE IRA EXEMPTION IN BANKRUPTCY COURT WAS NOT PROHIBITED BY *ROOKER-FELDMAN*, FULL FAITH AND CREDIT, OR COLLATERAL ESTOPPEL

The Alabama Creditors contend that the State Court proceedings involving the IRA exemption preclude any further litigation in the Bankruptcy Court regarding this issue. The creditors rely on *Rooker-Feldman*, the Full Faith and Credit clause, and collateral estoppel. None of these apply.

---

[15]The Alabama Creditors do not have standing to assert the alleged setoff rights of Morgan Stanley in Dorand's bankruptcy case. The setoff case law addresses the rights of a single creditor and debtor that are mutually indebted and reject the idea of a "triangular setoff" under the plain language of the Bankruptcy Code. *See, e.g., In re SemCrude, L.P.*, 399 B.R. 388, 393-94 (Bankr. D. Del. 2009) (collecting cases discussing that "courts have routinely held that triangular setoffs are impermissible in bankruptcy.") (citations omitted).

The Bankruptcy Court correctly concluded that the State Court rulings do not prohibit an adjudication of Dorand's exemption of the IRA from creditor claims in his Chapter 7 proceeding.

> A. Litigation of Dorand's bankruptcy exemption does not offend *Rooker-Feldman*.

The Alabama Creditors maintain that *Rooker-Feldman* prohibits any litigation in Bankruptcy Court regarding the IRA — precluding Dorand from defending the creditors' objection to the IRA exemption. *See* In. Brf. 32-39. By upholding the exemption, they argue the Bankruptcy Court ruling directly contradicts the State Court's denial of the exemption and ensuing judgment against Morgan Stanley authorizing a setoff of the IRA[16]. In. Brf.

_____

[16]This argument is also not preserved for review. In their objection to exemptions in Bankruptcy Court, the Alabama Creditors mention *Rooker-Feldman* once in their argument that Dorand did not own his home, but instead a trust, and any attempt to "merge those entities for the purpose of creating an exemption claim" would violate *Rooker-Feldman*. Appx. 151, ¶¶ 51-52. The Alabama Creditors raised *Rooker-Feldman* in their summary judgment motion, which the Bankruptcy Court denied. Appx. 543-545; Supp. Appx. 10. And the Alabama Creditors never raised *Rooker-Feldman* in their supplemental brief, which the Bankruptcy Court ordered the parties to submit clarifying their legal position after denying the creditors' summary judgment motion. *See* Appx. 598-601 (discussing scope and purpose of supplemental briefing); Appx. 1206-1242 (Alabama Creditor's supplemental brief omitting any discussion of *Rooker-Feldman*). Notably, the Bankruptcy Court's Exemption Order addresses the Chapter 7 Trustee's argument regarding *Rooker-Feldman* — not any argument by the Alabama Creditors,

35-37. The creditors misunderstand *Rooker-Feldman*, the Bankruptcy Court's jurisdiction, and improperly equate the Bankruptcy Court's ruling with the State Court's garnishment/creditor's bill ruling even though the Bankruptcy Court determined the exemption at a different time, for a different purpose, and under different law.

*Rooker-Feldman* is a narrow doctrine that prohibits state court litigants from appealing to a federal district court to "complain[] of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Behr v. Campbell*, 8 F.4th 1206, 1209-10 (11th Cir. 2021) (citing *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005) (involving *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 476 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923)). As this Court recently explained, "[o]nly when a losing state court litigant calls on a district court to modify or 'overturn and injurious state-court judgment' should a claim be dismissed under *Rooker-Feldman*; district courts do not lose subject matter

---

which is noted in the creditors' initial brief. *See* In. Brf. at 33 (citing Appx. 1285 at fn. 5) (stating "[t]he trustee mentions *Rooker-Feldman* in her brief (doc. 182), but that doctrine is inapplicable for the same reason.").

jurisdiction over a claim 'simply because a party attempts to litigate in federal court a matter previously litigated in state court.'" *Behr*, 8 F.4th at 1210 (quoting *Exxon Mobil*, 544 U.S. at 292-93). This Court has cautioned that *Rooker-Feldman* "will almost never apply." *Behr*, 8 F.4th at 1212.

And unsurprisingly, *Rooker-Feldman* does not apply here. As a jurisdictional doctrine, it is imperative to first address the Bankruptcy Court's subject matter jurisdiction over the IRA and the Alabama Creditors' objection to exemption.

As discussed, when Dorand filed Chapter 7 bankruptcy, an estate was created consisting of all legal and equitable interests of the debtor in property. *See* 11 U.S.C. § 541(a)(1). Pursuant to 28 U.S.C. § 1334(e), the Bankruptcy Court had exclusive jurisdiction of all Dorand's property wherever located, including the IRA. *See* 28 U.S.C. § 1334(e)(1). As this Court has recognized, "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *In re Ryan*, 276 Fed.Appx. 963, 966 (11th Cir. 2008); *see also In re Fundamental Longterm Care, Inc.*, 873 F.3d 1325, 1336 (11th. Cir. 2017). And as "the court administering the bankrupt's estate—the res—[the Bankruptcy Court] is the court with the

power to enter orders effecting its distribution and 'to adjudicate rights in it that are binding against the world.'" *Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958, 969 (11th Cir. 2012). When the Alabama Creditors objected to Dorand's exemption of the IRA, this initiated a core proceeding over which the Bankruptcy Court undoubtedly had subject matter jurisdiction pursuant to 28 U.S.C. § 157 (b)(2)(B). *See* 28 U.S.C. § 157(b)(2)(B) (enumerating core proceedings bankruptcy judges may hear and determine including the "allowance or disallowance of claims against the estate or exemptions from property of the estate").

Next, *Rooker-Feldman* does not apply because the State Court exemption proceeding involved different legal issues than the Bankruptcy Court proceeding. The Alabama Creditors objected to the IRA exemption in State Court based on Alabama procedural and substantive law, and even certain federal tax code provisions. *See* Appx. 219-222; Appx. 224-233. But Dorand's IRA exemption in Bankruptcy Court is governed by the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, and Florida Statutes. Despite the Alabama Creditors' urging, the State Court exemption proceeding involved an entirely different procedural and substantive framework.

Finally, the Alabama Creditors are not the state-court losers on the IRA exemption issue. The Alabama Creditors do not identify a single decision supporting the notion that a state-court post-judgment ruling on an asset exemption bars further consideration of the exemption in a judgment debtor's subsequent bankruptcy proceeding under *Rooker-Feldman*. Against this backdrop, *Rooker-Feldman* does not apply.

B. The Full Faith and Credit clause does not prohibit a ruling from the Bankruptcy Court on the IRA exemption.

As this Court is aware, "[t]he Full Faith and Credit Act provides that state court judgments 'shall have the same full faith and credit in every court within the United States … as they have by law or usage in the courts of such State … from which they are taken.' " *In re Friedberg*, 502 B.R. 8, 13 (Bankr. D. Conn. 2013) (quoting 28 U.S.C. § 1738)). Federal courts are directed by the statute "to refer to the preclusion law of the State in which judgment was rendered." *Friedberg*, 502 B.R. at 13 (quoting *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985)). Finally, a "two-step process [ ] determine[es] whether to give full faith and credit to a state court's judgment: (1) examine the law of the state in which the decision was rendered to determine whether that state's law would afford full faith and

credit to the judgment in question; and, if so (2) decide whether a recognized exception exists which would deny full faith and credit to the state court judgment." *Friedberg*, 502 B.R. at 13 (citing *Marrese*, 470 U.S. at 381)).

As the Bankruptcy Court correctly held, the "practical effect of this doctrine is that this court applies Alabama preclusion law to the state court's exemption order." Appx. 1283-84 (citing *In re Harris*, 3 F.4th 1339, 1344 (11th Cir. 2021); and *Beem v. Ferguson*, 713 F. App'x 974, 983 (11th Cir. 2018)). In their argument on Full Faith and Credit, the Alabama Creditors incorrectly presuppose that Alabama preclusion law bars any defense of its objection to exemption of the IRA in the Bankruptcy Court. But as set forth below, Alabama preclusion law does not prevent Dorand from defending the Alabama Creditors' objection to exemption of the IRA in Bankruptcy Court[17]. Accordingly, the Full Faith and Credit clause does not preclude consideration of the IRA exemption in Dorand's Chapter 7 proceeding.

---

[17]The Alabama Creditors abandon on appeal the argument they presented to the Bankruptcy Court regarding claim preclusion. *See* Appx. 1212-13, 1221-22 (arguing *res judicata*); *compare* In. Brf. 39-50 (arguing collateral estoppel).

C. Collateral estoppel does not apply.

The Alabama Creditors argue Dorand is collaterally estopped from "claiming any exemption that he was denied by the Alabama judgment." In. Brf. 44. But collateral estoppel does not apply; the exemption issue is different in Bankruptcy Court and involves different legal principles.

Relevant here, application of collateral estoppel requires three elements: "(1) the issue must be identical to the one involved in the previous suit; (2) the issue must have been actually litigated in the prior litigation; and (3) the resolution of the issue must have been necessary to the prior judgment."[18] *McCulley v. Bank of America, N.A.*, 605 Fed.Appx. 875, 878 (11th Cir. 2015). None of these elements are present in this case.

---

[18]Alabama law on issue preclusion applies because the State Court exemption order was rendered by an Alabama state court. *CSX Transportation, Inc. v. Brotherhood of Maintenance of Way Employees*, 327 F.3d 1309, 1316-17 (11th Cir. 2003) (explaining that "federal preclusion principles apply to prior federal decisions, whether previously decided in diversity or federal question jurisdiction."). As the Alabama Creditors correctly identify, "Alabama law on the doctrines of *res judicata* and collateral estoppel is substantively the same as federal law." In. Brf. 45; *McCulley*, 605 F. App'x at 878. There is no dispute that the parties are identical, so this element is met.

1. The State Court exemption proceeding did not involve an identical issue.

The State Court exemption proceeding did not involve the identical issue presented in Bankruptcy Court. The State Court proceeding involved the Alabama Creditors' right to collect their judgment from the IRA based on Alabama procedural and substantive law, and federal law governing an IRA. On the other hand, the Alabama Creditors' objection in Bankruptcy Court involved bankruptcy procedure and substance, which ultimately invoked Florida state law to determine the IRA exemption. Accordingly, the issues are not identical.

As background, Bankruptcy Code section 522(b)(1) allows "an individual debtor [to] exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection." 11 U.S.C. § 522(b)(1). Section 522(b)(2) incorporates various types of property enumerated in paragraph (d) — the federal exemptions — which the debtor may claim as exempt "unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so

authorize."[19] *See* 11 U.S.C. § 522(b)(2). Section 522(b)(3)(A) identifies the "State law" that governs the determination of the individual debtor's exemption claims which is the law "that is applicable on the date of the filing of the petition to the place in which the debtor's domicile has been located for the 730 days immediately preceding the [petition date]". 11 U.S.C. § 522(b)(3)(A). Here, Dorand was domiciled in the State of Florida for the 730-day period preceding the petition date. *See* Appx. 530, ¶ xvii (discussing purchase of Dorand's residence in 2013 in Santa Rosa Beach, Florida). With this background, Florida state law applies.

Federal Rule of Bankruptcy Procedure 4003(b)(1) provides that "a party in interest may file an objection to the list of property claimed as exempt". Fed. R. Bankr. P. 4003(b)(1). The outcome of any objection pursuant to this rule ultimately determines whether the property claimed as exempt revests in the debtor or remains property of the estate pursuant to section 541(a) subject to administration by the Chapter 7 Trustee. *See, e.g., In re Fonke*,

---

[19]Florida is an "opt-out" state — section 222.20, Florida Statutes provides that "residents of this state shall not be entitled to the federal exemptions provided in s. 522(d) of the Bankruptcy Code of 1978 (11 U.S.C. s. 522(d))." Fla. Stat. § 222.20 (2022). Thus, Florida law governs Dorand's exemptions, which the Alabama Creditors ignore in their discussion of this issue. *See* In. Brf. 52.

321 B.R. 199, 204-05 (Bankr. S.D. Tex. 2005) (explaining process and effect of claiming exemptions from property of the estate) (citing *Taylor v. Freeland & Kronz*, 503 U.S. 638, 641 (1992)).

The Alabama Creditors did not object in State Court to Dorand's exemption of property from his bankruptcy estate pursuant to Federal Rule of Bankruptcy Procedure 4003(b). The creditors did not challenge Dorand's right to exempt property from administration for the benefit of *all* Dorand's creditors — the creditors opposed Dorand's claim of exemption in an effort to collect the judgment debt owed to them. This is a different issue than an objection to a bankrupt debtor's exemption claim because, having not yet filed bankruptcy, there was no estate pursuant to Bankruptcy Code section 541(a)(1) from which the Debtor could claim any exemption. *See In re Magelitz*, 386 B.R. 879, 883 (Bankr. N.D. Fla. 2008) (recognizing that "a debtor's exemptions in bankruptcy are determined as of the date of filing of the petition") (citations omitted).

Equally important, the State Court exemption proceeding did not involve Florida law. When the Alabama Creditors initiated the garnishment/creditor's bill proceeding against Morgan Stanley, Dorand filed a "Claim of Exemption" in response pursuant to Alabama Rule of Civil

Procedure 64A. Appx. 213-216. The form does not identify the statutory basis of the exemptions, but the relevant Alabama procedural rule confirms the underlying exemptions are based on Alabama and federal law. *See* Ala. R. Civ. P. 64A (stating in form notice to debtor of right to claim exemption that "*Laws of the State of Alabama and of the United States* provide that in some circumstances certain money and property may not be taken to pay certain types of court judgments …") (emphasis added). And notably, Dorand never referenced any Florida law in his State Court exemption claim form or amended claim of exemption. Appx. 215; Supp. Appx. 13-15.

The Alabama Creditors contested Dorand's exemption claim in State Court based upon Alabama state law and federal tax code provisions[20]. Appx. 219-220; *see also* Appx. 224-233. The creditors challenged the exemption contending that Dorand (i) failed to provide a property inventory as required by § 6-10-29, Code of Alabama 1975 and Alabama Rule of Civil Procedure 64B; (ii) engaged in prohibited transactions relating to the IRA

_____

[20]The Alabama Creditors abandon on appeal the arguments they presented to the State Court and Bankruptcy Court that the IRA is not exempt (i) pursuant to 26 U.S.C. § 408(a) because a trust owns the IRA — not Dorand; and (ii) pursuant to 26 U.S.C. § 4975 because Dorand engaged in prohibited transactions involving excessive contributions. *See* Appx. 229-230; 1234-1235; 1241; *compare* In. Brf.

under various Internal Revenue Code provisions (Title 26 USC); (iii) owns his IRA in a trust disqualifying its protected status under Internal Revenue Code provisions; and (iv) is ineligible to exempt assets held by the trust pursuant to Title 6, Chapter 10 of the Code of Alabama. Appx. 226-232. There is no reference to section 222.21, Florida Statutes — the statutory basis of Dorand's IRA exemption in Bankruptcy Court.

The Alabama Creditors referenced three opinions emanating from the Florida court system. But none of these decisions involves any legal principle that was dispositive of the IRA exemption in Bankruptcy Court. Appx. 228-229 (citing *State of Fla. Bd. of Trustees of Internal Imp. Trust Fund v. Charley Toppino & Sons, Inc.*, 514 F. 2d 700, 704 (5th Cir. 1975); *Cash Inn of Dade, Inc. v. Metropolitan Dade County*, 938 F. 2d 1239, 1243 (11th Cir. 1991); and *In re Hughes*, 293 B.R. 528, 530 (Bankr. M.D. Fla. 2003). The Alabama Creditors cited the first two decisions for the unremarkable proposition that courts "may take judicial notice of the contents of [their] own [c]ourt file". Appx. 228. The *Hughes* decision is cited for its application of Internal Revenue Code provisions governing the exempt status of an IRA. Appx. 229. Under these circumstances, the State Court exemption proceeding did not involve the same procedural or substantive law as the Bankruptcy Court exemption

proceeding and, thus, the issues decided in State Court and Bankruptcy Court are not identical.

The Alabama Creditors' argument that Florida law was interjected into the State Court exemption proceeding is based on the perception of counsel who spotted similarities between the exemption form Dorand filed in the State Court and a form used in Florida. *See* Appx. 1209-1210 (arguing to Bankruptcy Court in supplemental brief that Dorand's garnishment exemption form appeared similar to Florida exemption form, which Alabama Creditors' counsel took as Dorand's notice under Alabama procedural law that Dorand "had asserted Florida substantive law regarding his exemption rights."). However, neither the Alabama Creditors nor Dorand relied upon any Florida exemption law in the State Court exemption proceeding. The Bankruptcy Court correctly determined that the issues in State Court were not identical to the issues in Bankruptcy Court.

2. The Debtor's entitlement to exemptions under applicable Florida law was not actually litigated.

As established and contrary to the Alabama Creditors' representation in Bankruptcy Court[21], the State Court exemption proceeding did not involve bankruptcy procedure or substance. Nor did the State Court apply Florida law in evaluating the Alabama Creditors' objection to the IRA exemption. Accordingly, the issue of whether Dorand's IRA is exempt from creditor claims in his Chapter 7 proceeding pursuant to section 222.21, Florida Statutes, was not actually litigated in the State Court. This is another reason that collateral estoppel does not apply[22].

As discussed, the State Court exemption proceeding did not involve bankruptcy procedural or substantive law, or any Florida law. Neither the Alabama Creditors nor Dorand raised these issues. The State Court never applied Florida law — there is no reference to any state's substantive law in the State Court's ruling. Appx. 413. Under these circumstances, Dorand's entitlement to exempt property from his bankruptcy estate pursuant to

---

[21]*See* Appx. 152 at ¶ 62 (representing that "[t]he Debtor's claims [of exemption] *were decided under Florida substantive law* …") (emphasis added).

[22]Each element of collateral estoppel must be satisfied for the doctrine to apply. *See, e.g., Matter of Sankner*, 69 B.R. 312, 315 (Bankr. M.D. Fla. 1987).

applicable Florida law was not actually litigated in the State Court. As the Bankruptcy Court correctly held, "the issue of [Dorand's] exemption <u>at the time of the bankruptcy filing</u> was not and could not have been litigated in the earlier [S]tate [C]ourt case." Appx. 1286 (emphasis in original).

>   3. Resolution of Dorand's substantive legal right to exempt the IRA was not necessary to the State Court's order.

Finally, collateral estoppel does not apply because resolution of Dorand's right to exempt the IRA under Florida law was not necessary to the State Court's order. In their objection, the Alabama Creditors relied on Alabama law requiring a judgment debtor to accompany an exemption claim with an inventory of personal property. Appx. 226 (referencing § 6-10-29, Code of Alabama, 1975 requiring personal property statement to accompany claim of exemption). The Alabama Creditors raised other non-Florida-law grounds in opposition to the Debtor's claim of exemption. Appx. 229-232. Neither Dorand nor the Alabama Creditors raised any Florida exemption law in the State Court exemption proceeding. It follows that resolution of any Florida exemption law was not necessary to the State Court's exemption order. *See* Appx. 413.

Even if Florida law had been raised in State Court, the State Court order denying Dorand's exemption claim is general in nature — it does not specify the legal basis of the State Court's ruling. Appx. 413. The order merely says "[t]he [Alabama Creditors] filed a proper contest to the claim of exemption, making both procedural and substantive challenges to the same." *Id.* The order states that "[a]fter consideration of all pleadings, exhibits, submissions, and oral argument, the Claim of Exemption filed by [Dorand] is hereby DENIED." *Id.* The State Court hearing transcript disposing of the IRA exemption sheds no further light on the reasoning for the court's ruling. *See* Appx. 991-1014. With this background, resolution of Dorand's substantive legal entitlement to any exemption under Florida law was not a necessary feature of the State Court's order — the order also acknowledges 'procedural' challenges, which could have sustained denial of the exemption.

As this Court recently acknowledged, "[i]f a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone." *Harris*, 3 F.4th at 1348. (citation omitted). Because the State Court did not

elaborate on its reasoning for denying the IRA exemption, its order is not entitled to preclusive effect because the Alabama Creditors asserted procedural and substantive challenges to the exemption. Even if Florida law were raised — which is not evident from any of the State Court filings — the non-Florida legal challenges to the exemption preclude application of collateral estoppel.

Under these circumstances, collateral estoppel did not preclude the Bankruptcy Court's consideration of Dorand's exemption of the IRA. The issues litigated in State Court and Bankruptcy Court are not identical; Dorand's bankruptcy estate exemption pursuant to section 222.21, Florida Statutes, was not actually litigated in State Court; and even if Florida exemption law were raised in State Court, a ruling on this issue was not necessary to the State Court exemption order based on other Alabama/federal law issues that the creditors raised. Finally, "[a]ny reasonable doubt as to the preclusive effect of the state court judgments must be resolved against the party seeking issue preclusion." *In re Gray*, 322 B.R. 682, 689 (Bankr. N.D. Ala. 2005). Here, aside from the identity of the parties, none of the requisite elements of collateral estoppel have been met.

## CONCLUSION

This Court should affirm the Bankruptcy Court and uphold the IRA exemption. The IRA is property of Dorand's bankruptcy estate. The funds in the IRA are not subject to any valid setoff right because Morgan Stanley and Dorand are not mutually indebted. The State Court exemption proceeding does not preclude review of the IRA exemption in Bankruptcy Court. *Rooker-Feldman*, Full Faith and Credit, and collateral estoppel do not apply.

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because this brief contains 11,295 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) as well as the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Book Antiqua 14-point font.

Dated this 24th day of April 2023.        /s/ *Robert J. Powell*        .
**ROBERT J. POWELL**

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2023, I electronically filed this brief with the Clerk of the Court of the United States Court of Appeals for the Eleventh Circuit via the CM/ECF system. I further certify that counsel to the Alabama Creditors, Nick Wooten, Esquire was served with this brief electronically via email to nick@texasjustice.com and through Mr. Wooten's registration with the Court's CM/ECF system.

/s/ *Robert J. Powell*
**ROBERT J. POWELL**